# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### 3:18 CV 279

| | | |
|---|---|---|
| DOROTHY P. STACY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM AND |
| | ) | RECOMMENDATION |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on the parties' cross motions for summary judgment (Docs. 6, 10). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying her claim for disability benefits. Following a review of the record, the parties' briefs, and relevant legal authority, the undersigned respectfully recommends that Plaintiff's motion for summary judgment be granted and that the Commissioner's motion for summary judgment be denied.

## I.   Procedural History

On September 27, 2013, Plaintiff protectively filed a Title II application

for a period of disability and disability insurance benefits.[1] (Transcript of Administrative Record ("T") 20.) Plaintiff alleged a disability onset date of January 1, 2012. (T. 20.) Plaintiff's claim was denied initially on March 28, 2014, and upon reconsideration on April 17, 2015. (T. 20.)

Plaintiff filed a written request for a hearing on May 26, 2015. (T. 20.) A hearing was held on March 27, 2017, in Charlotte, North Carolina. (T. 20.) Plaintiff appeared and testified. (T. 20.) Janette Clifford, a vocational expert ("VE"), also appeared. (T. 20.) At the time of the hearing, Plaintiff was represented by attorney Rachel Pickard. (T. 20.)

On May 24, 2017, the Administrative Law Judge ("ALJ") issued an unfavorable decision. (T. 20-32.) The Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision. (T. 1-4.)

On May 29, 2018, Plaintiff filed the instant action seeking review of the Commissioner's final decision. See (Doc. 1).

## II. Standard for Determining Disability

An individual is considered "disabled," and therefore may receive disability payments, if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental

---

[1] "Protective filing refers to the first time an individual contacts the Social Security Administration to file a claim for benefits. A protective filing allows an individual to have an earlier application date than the date the application is signed." Hess v. Colvin, No. 3:12-CV-1907, 2014 WL 901144, at *1 n.3 (M.D. Pa. Mar. 7, 2014).

2

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). The Commissioner undertakes a five-step inquiry to determine whether a claimant is disabled. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). Under the five-step sequential evaluation, the Commissioner must consider each of the following: (1) whether the claimant has engaged in substantial gainful employment; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is sufficiently severe to meet or exceed the severity of one or more of the listing of impairments contained in Appendix I of 20 C.F.R. Part 404, Subpart P; (4) whether the claimant can perform his or her past relevant work; and (5) whether the claimant is able to perform any other work considering his or her age, education, and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520; Mastro, 270 F.3d at 177; Johnson, 434 F.3d at 653 n.1.

At the first two steps of the sequential evaluation, the burden is on the claimant to make the requisite showing. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If a claimant fails to satisfy his or her burden at either of these first two steps, the ALJ will determine that the claimant is not disabled, and the process comes to an end. Mascio v. Colvin, 780 F.3d 632, 634-35 (4th Cir. 2015). The burden remains on the claimant at step three to demonstrate that

3

the claimant's impairments satisfy a listed impairment and, thereby, establish disability. <u>Monroe</u>, 826 F.3d at 179.

If the claimant fails to satisfy his or her burden at step three, the ALJ must still determine the claimant's RFC. <u>Mascio</u>, 780 F.3d at 635. After determining the claimant's RFC, the ALJ proceeds to step four in order to determine whether the claimant can perform his or her past relevant work. <u>Id.</u> The burden is on the claimant to demonstrate that he or she is unable to perform past work. <u>Monroe</u>, 826 F.3d at 180. If the ALJ determines that a claimant is not capable of performing past work, then the ALJ proceeds to step five. <u>Mascio</u>, 780 F.3d at 635.

At step five, the ALJ must determine whether the claimant can perform other work. <u>Id.</u> The burden rests with the Commissioner at step five to prove by a preponderance of the evidence that the claimant can perform other jobs that exist in significant numbers in the national economy, considering the claimant's RFC, age, education, and work experience. <u>Id.</u>; <u>Monroe</u>, 826 F.3d at 180. Typically, the Commissioner satisfies her burden at step five with the testimony of a VE, who responds to a hypothetical question from the ALJ that incorporates the claimant's limitations. <u>Mascio</u>, 780 F.3d at 635; <u>Monroe</u>, 826 F.3d at 180. If the Commissioner satisfies her burden at step five, then the ALJ will find that the claimant is not disabled and deny the application for disability benefits. <u>Mascio</u>, 780 F.3d at 635; <u>Monroe</u>, 826 F.3d at 180.

4

## III. The ALJ's Decision

In her May 24, 2017 decision, the ALJ found that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. (T. 20-32.) In support of that conclusion, the ALJ made the following specific findings:

(1) The claimant last met the insured status requirements of the Social Security Act on December 31, 2015.

(2) The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 1, 2012 through her date last insured of December 31, 2015 (20 C.F.R. § 404.1571 et seq.).

(3) Through the date last insured, the claimant had the following severe impairments: osteoarthritis, degenerative disc disease, migraine headaches, fibromyalgia, obesity, affective disorder, and anxiety (20 C.F.R. § 404.1520(c)).

(4) Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

(5) After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the RFC to perform light work[2] as defined in

---

[2] The regulations define light work as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss

5

20 C.F.R. § 404.1567(b), except the claimant can occasionally climb ladders, ropes and scaffolds. She can frequently climb ramps and stairs, as well as have frequent exposure to excessive noise and exposure to workplace hazards such as unprotected heights and dangerous machinery. Additionally, the claimant can perform simple, routine, repetitive tasks, and handle routine changes in the workplace, with occasional interaction with the general public. However, she cannot perform fast pace, production rate work. The claimant would also need a sit/stand option, alternating positions approximately two times per hour without losing productivity.

(6)     Through the date last insured, the claimant was unable to perform any past relevant work (20 C.F.R. § 404.1565).

(7)     The claimant was born on September 12, 1970 and was 45 years old, which is defined as a younger individual age 18-49, on the date last insured. (20 C.F.R. § 404.1563).

(8)     The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 404.1564).

(9)     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See Social Security Ruling ("SSR") 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

(10)    Through the date last insured, considering the claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 C.F.R. §§ 404.1569 and 404.1569(a)).

(11)    The claimant was not under a disability, as defined in the

---

of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

> Social Security Act, at any time from January 1, 2012, the
> alleged onset date, through December 31, 2015, the date last
> insured (20 C.F.R. § 404.1520(g)).

(T. 20-32.)

## IV. Standard of Review

Title 42, United States Code, Section 405(g) provides that a plaintiff may file an action in federal court seeking judicial review of the Commissioner's denial of social security benefits. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). The scope of judicial review is limited in that the district court "must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); accord Monroe, 826 F.3d at 186. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Craig, 76 F.3d at 589 (internal quotation marks omitted). It is more than a scintilla but less than a preponderance of evidence. Id.

When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Id. Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that she is not disabled is supported by substantial evidence in the record and whether the ALJ reached her decision based on the

7

correct application of the law. Id.

## V. Analysis

### A. The ALJ's RFC Findings

Plaintiff initially argues that the ALJ erred in formulating her RFC assessment by failing to account appropriately for Plaintiff's migraines and her social limitations. Pl.'s Mem. (Doc. 7) at 12, 21-22.[3]

RFC is defined as "the most [a claimant] can do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). SSR 96-8p, 1996 WL 374184 (July 2, 1996), provides that an ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." Id. at *7. In formulating an RFC, the ALJ is not required to discuss every piece of evidence. See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). The ALJ is, however, required to build a logical bridge from the evidence of record to his conclusion. Monroe, 826 F.3d at 189; see also Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000). With respect to the function-by-function analysis, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis[.]" SSR 96-8p, 1996

_____

[3] The references to the page numbers of the parties' filings refer to the page numbers inserted by the CM-ECF system.

8

WL 374184, at *1.

1. **Migraine Headaches**

a. **Consideration of the Evidence**

Plaintiff contends that the ALJ did not take into account the frequency or intensity of her migraine headaches, or the disruptions they cause in her ability to work. Pl.'s Mem. (Doc. 7) at 12. In particular, she alleges that the medical evidence demonstrates she has frequent, intense migraines and that the ALJ improperly disregarded the limitations created by the migraines because the objective medical evidence was not supportive. Id. at 13-18.

The ALJ found that Plaintiff had multiple severe impairments, including migraine headaches, and that those impairments caused significant limitations in Plaintiff's ability to perform basic work-related activities. (T. 23).

In her RFC analysis, the ALJ noted Plaintiff's testimony, including her testimony regarding migraine headaches. (T. 26.). Likewise, the ALJ referenced various medical evidence:

- Ashok Pillai, M.D., a neurologist, examined Plaintiff for her headaches in May and June 2012. (T. 26). Dr. Pillai found that Plaintiff likely had a cervicogenic headache with transformed migraine headache and noted that an MRI of Plaintiff's brain was unremarkable (T. 26).

- Eugene Reynolds, M.D., a consultative examiner, examined Plaintiff

9

on February 1, 2014, and diagnosed her with migraine headaches by history. (T. 27).

- Plaintiff was seen at various times at Caromont Medical Group between July 2014 and April 2015. She continued to complain of migraine headaches and received certain treatment, though "her exams were mostly unremarkable, revealing few changes from past exams." (T. 28).

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (T. 28). With respect to migraines in particular, the ALJ stated that Plaintiff "reported migraines, but tests and MRIs were consistently unremarkable." (T. 29).

Consequently, though Plaintiff may disagree with the ALJ's view of the evidence concerning her migraine headaches, the record does not indicate that the ALJ failed to consider and account for Plaintiff's headaches in formulating the RFC.

### b. Reliance on VE Testimony

Plaintiff also briefly raises an argument that the ALJ failed to recognize the VE's testimony that missing more than one day of work per month or being

off task more than 10 percent of a workday would preclude all work. Pl.'s Mem. (Doc. 7) at 21.

Plaintiff is correct that the VE testified that, if an individual had to be off task more than 10% of the workday or miss work more than one day a month, he or she would be unable to work. (T. 73). However, the ALJ did not find that those limitations accurately reflected Plaintiff's circumstances and did not adopt those limitations. See (T. 25). See Fisher v. Barnhart, 181 F. App'x 359, 364 (4th Cir. 2006) ("[A] hypothetical question is unimpeachable if it '*adequately reflect[s]*' a residual functional capacity for which the ALJ had sufficient evidence.") (quoting Johnson, 434 F.3d at 659); see also Craigie v. Bowen, 835 F.2d 56, 57-58 (3d Cir. 1987) (an ALJ is not required to credit VE testimony that comes in response to a hypothetical question that includes limitations the ALJ found not to be credible).

### 2.  Social Functioning

Next, Plaintiff argues that the ALJ failed to credit her limitations in social functioning. Pl.'s Mem. (Doc. 7) at 21-22.

In her opinion, the ALJ cited Walter H. McNulty, Jr. Ph.D., a consultative psychological examiner, who noted that Plaintiff had a history of social isolation and found that Plaintiff's ability to relate to coworkers and supervisors was mildly impaired. (T. 24). The ALJ accorded Dr. McNulty's opinion great weight and found it to be consistent with Plaintiff's longitudinal

mental health record, which shows only mild-to-moderate mental limitations. (T. 29).

The ALJ also accorded great weight to the opinions of the State agency psychiatric consultants, Brian Grover, Psy.D., and April L. Strobel-Nuss, Psy.D., who both opined that Plaintiff could maintain concentration, persistence and pace to perform short and simple tasks. (T. 30, 85, 105). The ALJ concluded that the opinions by Drs. Grover and Strobel-Nuss were consistent with the findings of the consultative psychiatric examiner and Plaintiff's longitudinal mental health record, which demonstrated some limitations caused by fibromyalgia, depression, and anxiety. (T. 30).

Based on this evidence, the ALJ found that Plaintiff had a "moderate limitation" in "interacting with others." (T. 24). That finding required her either to: (1) include a corresponding limitation in the RFC analysis, or (2) explain why such a limitation was not warranted. See Dennis v. Berryhill, 362 F. Supp. 3d 303, 309 (W.D.N.C. Jan. 23, 2019) (citing Russell v. Colvin, No. 1:14-cv-00203-MR-DLH, 2015 WL 376628, at *4 (W.D.N.C. June 16, 2015)). Such a limitation or a corresponding explanation was not provided, however. The ALJ limited Plaintiff to an RFC with only "occasional interaction with the general public" (T. 25.), but that reference does not entirely account for the ALJ's finding. That is, while the ALJ properly accounted for Plaintiff's limitations in dealing with the public, she did not address Plaintiff's

limitations in interacting with coworkers and supervisors. See Young v. Barnhart, 362 F.3d 995, 1002 (7th Cir. 2004) ("Although this RFC requires that [the claimant] have limited contact with the public and coworkers, it says nothing of limiting contact with supervisors[.]").

Remand is therefore required. See Dennis, 362 F. Supp. 3d at 309 ("As it is currently articulated, the ALJ's decision does not resolve this potentially conflicting evidence, and it is not the Court's role to do so.").

## B. The ALJ's Symptom Evaluation

Next, Plaintiff argues that the ALJ was required to provide specific reasons for her findings on symptom evaluation that are supported by substantial evidence. Pl.'s Mem. (Doc. 7) at 23-26.

Under the regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process."[4] Craig, 76 F.3d at 594; accord Lewis, 858 F.3d at 865-66 (citing 20 C.F.R. § 404.1529(b)-(c)[5]). In the first step, the ALJ must determine whether objective medical evidence is

---

[4] SSR 16-3p rescinded SSR 96-7p and applies to ALJ decisions made on or after March 28, 2016. SSR 16-3p, 2017 WL 5180304, at *1 (2017). As noted, the ALJ's decision in this case was made on May 24, 2017. See (T. 20-32). SSR 16-3p eliminated the term "credibility" because the regulations do not use that term. 2017 WL 5180304, at *2. The intent of the change was to clarify that a subjective symptoms evaluation is not an examination of a claimant's character. Id.

[5] This regulation became effective on March 27, 2017 and was in effect at the time of the ALJ's decision in May 2017. See Oliphant v. Berryhill, No. 3:17-CV-00049-MR, 2018 WL 1368363, at *3 n.2 (W.D.N.C. Mar. 16, 2018) ("[T]he Court applies the regulations in effect at the time of the ALJ's decision.").

13

present to demonstrate that the claimant has a medical impairment that could reasonably be expected to produce the symptoms alleged, such as pain. 20 C.F.R. § 404.1529(b).

Under the second step, the ALJ must evaluate the intensity and persistence of the claimant's symptoms in order to determine the extent to which they affect the claimant's ability to work. Id. § 404.1529(c). In this analysis, the ALJ must assess the claimant's statements regarding his symptoms and their effect on his ability to perform work activities. Id. § 404.1529(c)(4). When the ALJ finds the claimant's statements to be less than fully reliable, he must support this conclusion by identifying those statements and explaining "how he decided which . . . to believe and which to discredit." Mascio, 780 F.3d at 640.

The following factors from 20 C.F.R. § 404.1529(c)(3) are considered, in addition to all the evidence, to evaluate intensity, persistence, and limiting effects of an individual's symptoms, such as pain:

(1) Daily activities;

(2) The location, duration, frequency, and intensity of pain or other symptoms;

(3) Factors that precipitate and aggravate the symptoms;

(4) The type dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

14

(5) Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

(6) Any measures other than treatment used to relieve pain or other symptoms; and

(7) Any other factors concerning an individual's functional limitations and restrictions caused by pain or other symptoms.

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms but did not find Plaintiff's statements to be entirely reliable.

In performing this analysis, the ALJ reviewed Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms and her statements regarding daily activities. (T. 28, 30.) The ALJ included specific reference to Plaintiff's reports of attending church regularly, walking on the treadmill on a daily basis, and playing with her dogs. (T. 28.). Further, the ALJ noted that Plaintiff was observed walking briskly into the hearing room and easily leaned over to put her purse down (T. 28) and that Plaintiff testified she had not worked since 2011, but she stopped working to go back to school and not because she was disabled (T. 29).

The ALJ determined the weight carried by Plaintiff's statements by comparing them to the medical records and noting inconsistencies.

The ALJ's symptom evaluation analysis was therefore consistent with

applicable case law and appropriately supported.  See Hawley v. Colvin, No. 5:12-cv-260-FL, 2013 WL 6184954, at *15 (E.D.N.C. Nov. 25, 2013) (recognizing that an ALJ need not accept the claimant's allegations at "face value").

## VI.   Recommendation

Based on the foregoing, the undersigned **RECOMMENDS:**

1.    That Plaintiff's motion for summary judgment (Doc. 6) be **GRANTED**, and this case be **REMANDED** for further proceedings pursuant to sentence four of § 405(g); and

2.    That the Commissioner's motion for summary judgment (Doc. 10) be **DENIED**.

Signed: August 8, 2019

W. Carleton Metcalf
United States Magistrate Judge

16

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).